THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION (RALEIGH)
CIVIL ACTION NO. 5:17-cv-633

| | |
|---|---|
| HARFORD MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CAROLINA PAINT AND DRY WALL, INC., MIGUEL ANGEL PEREZ DIOSDADO, INDIVIDUALLY AND A/K/A MIGUEL ANGEL PEREZ AND D/B/A CAROLINA PAINT & DRYWALL, INC., SOCORRO PEREZ DIOSDADO, INDIVIDUALLY, SOCORRO PEREZ DIOSDADO D/B/A CAROLINA PAINT & DRYWALL, INC., WILLY DAVID BAUTISTA MORILLO, JOANNE MARIE GRACEY, BRIAN THOMAS GRACEY, AND NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>Defendants. | **COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT** |

NOW COMES Plaintiff, HARFORD MUTUAL INSURANCE COMPANY ("Harford"), by and through the undersigned counsel, and for its complaint against Defendants Carolina Paint & Dry Wall, Inc., Miguel Angel Perez Diosdado, Individually and a/k/a Miguel Angel Perez and d/b/a Carolina Paint & Drywall, Inc., Socorro Perez Diosdado, Individually, Socorro Perez Diosdado d/b/a Carolina Paint & Drywall, Inc., Willy David Bautista Morillo, Joanne Marie Gracey, Brian Thomas Gracey, and Nationwide Mutual Insurance Company, alleges as follows:

1. Harford is a Maryland corporation with its principal place of business in Bel Air, Maryland, and is authorized to issue policies of insurance in the State of North Carolina.

2. Defendant Carolina Paint and Dry Wall, Inc. is a former corporation whose operations were suspended by the North Carolina Department of Revenue as of March 14, 2012.

3. Defendants Miguel Angel Perez Diosdado, who is also known as Miguel Angel Perez, and Miguel Angel Perez d/b/a Carolina Paint & Drywall, Inc. ("Miguel Perez"), is a citizen and resident of Wake County, North Carolina.

4. Defendants Socorro Perez Diosdado, individually and Socorro Perez Diosdado d/b/a Carolina Paint & Drywall, Inc., ("Socorro Perez"), is a citizen and resident of Wake County, North Carolina.

5. Upon information and belief, Defendant Willy Bautista Morillo ("Bautista") is a citizen and resident of Wake County, North Carolina.

6. Defendants Joanne Marie Gracey ("Joanne Gracey") and Brian Thomas Gracey ("Brian Gracey"), husband and wife, are citizens and residents of Wake County, North Carolina.

7. Defendant Nationwide Mutual Insurance Company ("Nationwide") is an Ohio corporation with its principal place of business in Columbus, Ohio, and is authorized to issue policies of insurance in the State of North Carolina.

## JURISDICTION

8. The Court has jurisdiction over this action under 28 U.S.C. § 1332(a), because Harford and the Defendants are citizens and residents of different states, and the matter in controversy, exclusive of interest and costs, exceeds the value of Seventy-Five Thousand Dollars ($75,000).

9. The Court further has jurisdiction over this action under 28 U.S.C. § 2201, *et seq.*, in that Harford seeks a judgment declaring that certain Business Auto Policies and Excess Umbrella Liability Insurance Policies issued by Harford to Carolina Paint & Drywall, Inc. afford

2

no coverage for damages sought by the Gracey Defendants against CP&D and the other Defendants, arising from an automobile accident.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because this insurance coverage dispute arises from underlying claims brought by the Gracey Defendants in Wake County Superior Court from alleged injuries and damage allegedly sustained by the Graceys in an automobile accident in this District, and the dispute arises from material misrepresentation in the insurance process by CP&D, through its representative, Miguel Perez, who is domiciled in this District.

## FACTS

### Applications for Harford Policies

11. Harford first issued to "Carolina Paint & Drywall, Inc." ("CP&D") a workers compensation policy for the policy period 6/16/2011 to 6/16/2012. The application for the workers compensation policy indicated that CP&D had two employees, and that the contact person for CP&D was Miguel Perez.

12. In the following year, on October 31, 2012, CP&D applied for a Commercial General Liability and Business Auto Policy with Harford.

13. The application for the Business Auto Policy, dated 10/31/2012, was completed by CP&D through Miguel Perez, and submitted to Harford by CP&D's insurance agent ("Application"). The Application listed a 2004 Chevrolet truck, VIN number IGCGG25V941194277 ("2004 Truck"), as the vehicle that CP&D sought to insure under the 2004 Business Auto Policy.

14. A genuine copy of the Application (with Social Security numbers redacted) is attached hereto as **Exhibit A** and incorporated herein by reference.

3

15. The Application asked CP&D to "LIST ALL DRIVERS, INCLUDING FAMILY MEMBERS THAT WILL DRIVE COMPANY VEHICLES, AND EMPLOYEES WHO DRIVE OWN VEHICLES ON COMPANY BUSINESS." The only driver listed in the Application was "Abelardo Ramos Serna."

16. The Application also asked the following question regarding ownership of vehicles sought to be covered under the Business Auto Policy:

> 1. WITH THE EXCEPTION OF ENCUMBRANCES, ARE ANY VEHICLES NOT SOLELY OWNED BY AND REGISTERED TO THE APPLICANT?

In response to this question, CP&D responded with an "X" under the "NO" column.

17. On November 15, 2012, CP&D, through Miguel Perez, completed a Commercial Insurance Application for Umbrella/Excess Coverage, which was submitted to Harford through CP&D's insurance agent.

18. A genuine copy of the application for Umbrella/Excess Coverage ("Umbrella Application") submitted to Harford is attached hereto as **Exhibit B** and incorporated herein by reference.

## Business Auto Policies

19. In reliance upon the statements in the Application, Harford issued to CP&D a Business Auto Policy, policy number 6046156, with effective dates of 10/29/2012 to 06/13/2013 and liability limits of $1,000,000 ("12/13 Business Auto Policy").

20. A genuine and certified copy of the 12/13 Business Auto Policy is attached hereto as **Exhibit C** and incorporated herein by reference.

21. In reliance upon the statements in the Application, Harford renewed the 12/13 Business Auto Policy, and issued policy number 6047655, with effective dates of 06/13/2013 to 06/13/2014 and liability limits of $1,000,000 ("13/14 Business Auto Policy").

22. A genuine and certified copy of the 13/14 Business Auto Policy is attached hereto as **Exhibit D** and incorporated herein by reference.

23. Prior to the renewal of the 13/14 Policy, CP&D, through a representative, represented to its insurance agent that CP&D owned another truck, *i.e.*, a 2005 Chevrolet truck, VIN number 1GBJ6C1C85F503779 ("2005 Truck"), and requested that the 2005 Truck be included as a covered auto under the Business Auto Policy.

24. In reliance upon the statements in the Application and the representation regarding ownership of the trucks, Harford renewed the 13/14 Business Auto Policy, and issued policy number 6051527, with effective dates of 06/13/2014 to 06/13/2015, and liability limits of $1,000,000 ("14/15 Business Auto Policy").

25. A genuine copy of the 14/15 Business Auto Policy is attached hereto as **Exhibit E** and incorporated herein by reference.

26. In reliance upon the statements in the Application and the representation regarding ownership of the trucks, Harford renewed the 14/15 Business Auto Policy, and issued policy number 6055624, with effective dates of 06/13/2015 to 06/13/2016 and liability limits of $1,000,000 ("15/16 Business Auto Policy").

27. A genuine copy of the 15/16 Business Auto Policy is attached hereto as **Exhibit F** and incorporated herein by reference.

28. After issuance of the 15/16 Business Auto Policy, CP&D, through a representative, represented to its insurance agent that CP&D owned a 2008 Ford Truck, VIN

number 1FTXW43R18EB04722 ("2008 Ford Truck"), and requested that the 2008 Ford Truck be added to the Business Auto Policy.

29. In reliance upon the statements in the Application and the representation regarding ownership of the trucks, Harford renewed the 15/16 Business Auto Policy, and issued policy number 6059745, which was effective on 06/13/2016 until it was cancelled for nonpayment of premium effective 08/08/2016, and contained liability limits of $1,000,000 ("16/17 Business Auto Policy").

30. A genuine, certified copy of the 16/17 Business Auto Policy is attached hereto as **Exhibit G** and incorporation herein by reference.

31. The 12/13 Business Auto Policy, the 13/14 Business Auto Policy, the 14/15 Business Auto Policy, the 15/16 Business Auto Policy and the 16/17 Business Auto Policy are referred to, collectively, hereafter, as "Business Auto Policies."

## Commercial Excess Policies

32. In reliance on the aforesaid statements of CP&D, through its representatives, and the Application and Umbrella Application, Harford also issued to CP&D a Commercial Excess Umbrella Liability policy, policy number 7959396, with effective dates of 11/15/2012 to 06/16/2013 and liability limits of $1,000,000 ("12/13 Umbrella Policy").

33. A genuine and certified copy of the 12/13 Umbrella Policy is attached hereto as **Exhibit H** and incorporated herein by reference.

34. In reliance on the aforesaid statements of CP&D, through its representatives, and the Application and Umbrella Application, Harford renewed the 12/13 Umbrella Policy as policy number 7960249, with effective dates of 06/16/2013 to 06/16/2014 and liability limits of $1,000,000 ("13/14 Umbrella Policy").

35. A genuine and certified copy of the 13/14 Umbrella Policy is attached hereto as **Exhibit I** and incorporated herein by reference.

36. In reliance on the aforesaid statements of CP&D, through its representatives, and the Application and the Umbrella Application, Harford renewed the 13/14 Umbrella Policy as policy number 7963447, with effective dates of 06/16/2014 to 06/16/2015 and liability limits of $1,000,000 ("14/15 Umbrella Policy").

37. A genuine and certified copy of 14/15 Umbrella Policy is attached hereto as **Exhibit J** and incorporated herein by reference.

38. In reliance on the aforesaid statements of CP&D, through its representatives, Harford renewed the 14/15 Umbrella Policy as policy number 7966862, with effective dates of 06/16/2015 to 06/16/2016 and liability limits of $1,000,000 ("15/16 Umbrella Policy").

39. A genuine and certified copy of the 15/16 Umbrella Policy is attached hereto as **Exhibit K** and incorporated herein by reference.

40. The 12/13 Umbrella Policy, the 13/14 Umbrella Policy, the 14/15 Umbrella Policy and the 15/16 Umbrella Policy are referred to, collectively, hereafter as "Umbrella Policies."

### Misstatements Regarding Corporation and Ownership of Covered Autos

41. Unbeknownst to Harford, at the time of the original Business Auto Application on October 31, 2102, the business operations of "Carolina Paint and Dry Wall, Inc." had been suspended by the North Carolina Department of Revenue, pursuant to N.C. Gen. Stat. § 105-232, effective March 14, 2012.

42. A genuine copy of the "NOTIFICATION OF REVENUE SUSPENSION" from the North Carolina Department of the Secretary of State ("Notification"), documented at

https://www.sosnc.gov/online_services/search/Business_Registration_Results, is attached hereto as **Exhibit L** and incorporated herein by reference.

43. The Notification states, in pertinent part, that: "[a]ny act performed or attempted to be performed during the period of suspension is invalid and of no effect, unless the Secretary of State reinstates the corporation or limited liability company pursuant to G.S. 105 232."

44. After the aforesaid suspension, the North Carolina Secretary of State did not reinstate Carolina Paint and Dry Wall, Inc. as a corporation.

45. Upon information and belief, CP&D, through its representative Miguel Perez, received a copy of the Notification in March 2012.

46. No corporation known as "Carolina Paint & Drywall, Inc." (the named insured on the Harford policies) exists now, or has ever existed, in the State of North Carolina or any other state.

47. Also unbeknownst to Harford, at the time of the Application on October 31, 2012, CP&D did not own the 2004 Truck for which coverage was sought under the 14/15 Business Auto Policy, the 15/16 Business Auto Policy and the 16/17 Business Auto Policies and all Umbrella Policies.

48. On October 31, 2012, and at all times thereafter, the 2004 Truck was owned by Miguel Perez's brother, Socorro Perez, not CP&D.

49. On October 31, 2012, and at all times thereafter, the 2005 Truck was owned by Socorro Perez, not CP&D.

50. At all relevant times, Socorro Perez also owned a 2004 Chevrolet Van, VIN number 1GCGG25V341247782 ("Van").

51. At all relevant times, the Van was insured under a policy of automobile liability insurance issued by Integon National Insurance Company to Socorro Perez.

52. At all relevant times, Socorro Perez also obtained automobile liability insurance for numerous other vehicles described in the applicable Integon National Insurance Company policy.

53. At all relevant times, the 2008 Ford Truck added to the 16/17 Business Auto Policy was not owned by either CP&D or Miguel Perez.

## The Accident

54. On September 26, 2014, an automobile collision occurred in Wake County, North Carolina ("Accident") between the Van, being operated by Bautista, and an automobile being operated by Joanne Gracey and owned by Brian Gracey.

55. Upon information and belief, Joanne Gracey sustained bodily injuries in the Accident.

## The Underlying Action

56. As a result of the Accident, the Gracey Defendants filed a civil action entitled: "Joanne Marie Gracey and Brian Thomas Gracey v. Willy David Bautista Morillo, Carolina Paint and Dry Wall, Inc., Miguel Angel Perez, Individually and d/b/a Carolina Paint & Drywall, Inc., and Socorro Perez Diosdado, Individually and d/b/a Carolina Paint & Dry Wall, Inc.," 17 CVS 137, Wake County Superior Court ("Underlying Action").

57. A genuine copy of the Complaint in the Underlying Action ("Underlying Complaint") is attached hereto as **Exhibit M** and incorporated herein by reference.

58. The Underlying Complaint alleges, *inter alia*, that the Graceys were injured in the Accident as a result of the negligent driving of Bautista; that at the time of the Accident, Bautista

was acting in the course and scope of his employment for Carolina Paint and Dry Wall, Inc., or Miguel Perez, individually, or Miguel Perez d/b/a CP&D, or Socorro Perez, individually, or Socorro Perez d/b/a CP&D.

59. The Underlying Complaint further names Nationwide as an unnamed defendant, as the purported Underinsured Motorist ("UIM") insurer for the Graceys.

60. Upon information and belief, Nationwide has retained counsel and is actively defending its interests in the Underlying Action.

61. As a result of the Underlying Complaint, Harford retained counsel to defend and is defending, under a reservation of rights, Carolina Paint and Dry Wall, Inc., Miguel Perez, individually, and Miguel Perez d/b/a CP&D in the Underlying Action

62. Upon information and belief, Integon National Insurance Company is defending Bautista, Socorro Perez, and Socorro Perez d/b/a CP&D, in the Underlying Action.

## FIRST CLAIM – RESCISSION

63. Harford incorporates herein by reference the preceding paragraphs of this Complaint for Rescission and Declaratory Judgment.

64. Harford issued the Business Auto Policies in reliance on Miguel Perez's misstatements in the Application regarding the corporate existence of the entity to be insured.

65. Harford relied, to its detriment, on the misstatements in the Application and Umbrella Application regarding the entity to be insured under the Policies in that neither "Carolina Paint & Drywall, Inc." nor "Carolina Paint and Dry Wall, Inc." were viable corporations on the date of the Application or the Renewal Application.

66. Harford would not have issued the Business Auto Policies had Harford known that the operations of Carolina Paint and Dry Wall, Inc. were suspended on the date of the

Application and Umbrella Application and that no corporation existed by the name of "Carolina Paint & Drywall, Inc."

67. Harford relied, to its detriment, upon CP&D's misstatements, through Miguel Perez, in the Application and Umbrella Application for insurance with Harford and the oral representation thereafter, regarding the ownership of the 2004 Truck, the 2005 Truck, and the 2008 Ford Truck.

68. Harford would not have issued the Business Auto Policies had Harford known that Socorro Perez, not CP&D, owned the 2004 Truck and the 2005 Truck, or that the 2008 Ford Truck was not owned by CP&D and that said vehicle was not registered in the State of North Carolina.

69. Miguel Perez's misstatements, described above, were knowing and intentional, as shown, in part, by the fact that, at all relevant times, Socorro Perez obtained separate automobile liability insurance for numerous other vehicles that he owned and used in the paint and drywall business.

70. The Business Auto Policies provide, in **SECTION IV – BUSINESS AUTO CONDITIONS**, paragraph **B. General Conditions**, that coverage is void, as follows:

> **2.     Concealment, Misrepresentation Or Fraud**
>
> This coverage form is void in any case of fraud by you at any time as it related to this Coverage Form. It is also void if you, or any other "insured," at any time, intentionally conceal or misrepresent a material fact concerning:
>
> a.   This coverage form;
> b.   The covered "auto";
> c.   Your interest in the covered "auto"; or
> d.   A claim under this coverage form.

**Exhibits C, D, E, F (form CA 00 01 03 10) and G (form CA 00 01 10 13)** page 9 of 12 (note that the language in **Exhibit G** is materially the same with slightly different wording).

71. Coverage under the Business Auto Policies is void due to the intentional, material misstatements of CP&D, through Miguel Perez, regarding the insured corporate entity and the true ownership of the 2004 Truck, the 2005 Truck, and the 2008 Truck scheduled on the Business Auto Policies.

72. Coverage under the Business Auto Policies is also void due to the fact that CP&D, through Miguel Perez, breached the requirement in the Business Auto Policies that the insured cooperate in the investigation of the claim, submit to an examination under oath, and provide requested documentation.

73. The Business Auto Policies state, in pertinent part:

> **A.    Loss Conditions**
>
> > **2.    Duties in The Event Of Accident, Claim, Suit Or Loss**
> >
> > > We have no duty to provide coverage under this policy unless there has been full compliance with the following duties: . . .
> > >
> > > > **b.**    Additionally, you and any other involved "insured" must:
> > > >
> > > > > **(2)**    Authorize us to obtain records and other information;
> > > > >
> > > > > **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit".
> > > >
> > > > **c.**    If there is a "loss" to a covered "auto" or its equipment you must also do the following:
> > > >
> > > > > **(4)**    Agree to examinations under oath at our request and give us a signed statement of your answers.

74. On May 23, 2016, June 20, 2016 and July 20, 2016, Harford, through the undersigned attorney, contacted CP&D, through Miguel Perez, in writing, requesting that

12

Miguel Perez submit to an examination under oath and provide records concerning the nature of the business of CP&D. Despite these requests, Miguel Perez refused to appear for his examination under oath and to provide requested documentation.

75. A genuine copy of the correspondence from Harford, through the undersigned, to Miguel Perez, described in the preceding paragraph, is attached hereto as **Exhibit N** and incorporated herein by reference.

76. Harford was prejudiced by CP&D's failure to cooperate because Harford was unable to timely investigate the facts surrounding the accident, the nature of CP&D's business and the insured risk, and Harford was forced to await depositions in the Underlying Action to acquire any knowledge concerning the accident, the statements made in connection with the Application and insurance, and the true nature of CP&D's business.

77. Harford is entitled to rescind the Business Auto Policies and Harford hereby requests rescission of such policies.

78. In connection with this request for rescission, Harford is tendering to CP&D a check for return of all premiums paid for the Business Auto Policies.

79. To the extent that CP&D, or any other Defendant, attempts to assert an estoppel against Harford due to any alleged, but denied, insufficiencies in Harford's reservation of rights or any other action in response to the claim, the estoppel doctrine is unavailing due to the unclean hands of CP&D, through Miguel Perez, in failing to respond to Harford's request for an examination under oath and production of documents, which prevented Harford from conducting thorough investigation or providing a complete coverage response prior to the institution of this action.

## SECOND CLAIM – DECLARATORY JUDGMENT

80. Harford incorporates herein by reference the foregoing allegations contained in this Complaint for Rescission and Declaratory Judgment.

81. As a result of the material misstatements by CP&D, through its representative, Miguel Perez, upon which Harford relied to its detriment, coverage is void under the Business Auto Policies.

82. The Umbrella Policies contain a "follow form" endorsement, providing that no coverage exists under the Umbrella Policy "unless such liability is covered by valid and collectible underlying insurance as described in ITEM 6 of the Declarations Page." *See* **Exhibits H, I, J, K "LIABILITY FOLLOWING FORM"** Endorsement (HMU-72C (0506)).

83. ITEM 6 of the Declarations of the Umbrella Policies lists the 14/15 Business Auto Policy. *See* **Exhibits H, I, J, K.**

84. Because the Business Auto Policies should be declared void and of no effect, no coverage exists under the Umbrella Policies for the damages sought in the Underlying Action.

85. Harford has been defending Carolina Paint and Dry Wall, Inc., Miguel Perez, individually, and Miguel Perez d/b/a Carolina Paint & Drywall, Inc., in the Underlying Action under a full reservation of rights.

86. Harford is entitled to a declaration that the Business Auto Policies are void and should be rescinded, and that Harford has no duty under the Business Auto Policies or the Umbrella Policies to defend Carolina Paint and Drywall, Inc., Miguel Perez, individually, Miguel Perez d/b/a Carolina Paint & Drywall, Inc., or any other defendant in the Underlying Action.

87. Harford is entitled to a declaration that the Business Auto Policies are void and that they should be rescinded, and that Harford has no duty under the Business Auto Policies or the Umbrella Policies to indemnify Carolina Paint and Dry Wall, Inc., Miguel Perez, individually, Miguel Perez d/b/a Carolina Paint & Drywall, Inc., or any other defendant in the Underlying Action, for damages that may be incurred in the Underlying Action.

88. Upon information and belief, the Defendants in this action contend that Harford owes defense and indemnity under the Business Auto Policies or the Umbrella Policies for the damages sought in the Underlying Action.

89. A genuine and justiciable controversy exists among the parties warranting a declaratory judgment from this Court declaring the rights and liabilities arising under the Business Auto Policies and the Umbrella Policies.

90. This Court may properly exercise jurisdiction over this action, despite the pendency of the Underlying Action, because the issues in this case are discrete, separate, and distinct from the liability issues in the Underlying Action, in that this action involves only the facts and the law concerning material misrepresentations by CP&D in the insurance process, and the failure of CP&D to submit to an examination under oath and produce requested records. These coverage issues will not be, and cannot be, litigated in the Underlying Action, in that these issues would present a conflict of interest for defense counsel retained by Harford in the Underlying Action, who is ethically prohibited from addressing insurance coverage issues in the Underlying Action.

WHEREFORE, Harford prays for the following relief:

1. That the Court enter an Order or Judgment declaring that the Business Auto Policies are void and rescinded.

2. That the Court enter an Order or Judgment declaring that no coverage exists under the Business Auto Policies or the Umbrella Policies for the damages sought in the Underlying Action.

3. That the Court enter an Order or Judgment declaring that Harford owes no duty to defend any Defendant in the Underlying Action and that Harford may withdraw its defense of the Underlying Action.

4. That the Court enter an Order or Judgment declaring that Harford owes no indemnity for any damages awarded against or in favor of any Defendant in the Underlying Action.

5. For such other and further legal or equitable relief as the Court deems just and proper.

6. FOR A TRIAL BY JURY ON ALL ISSUES OF FACT SO TRIABLE HEREIN.

This the 22nd day of December 2017.

**CRANFILL SUMNER & HARTZOG, LLP**

/s/Susan K. Burkhart
Susan K. Burkhart
N.C. State Bar Number 10151
Attorneys for Plaintiff
Post Office Box 27808
Raleigh, N.C. 27611-7808
Main Phone: 919-828-5100
Direct Phone: 919-863-8709
Direct Fax: 919-863-3537
Email: skb@cshlaw.com